UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ILLINOIS FARMERS INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | 1:14-cv-02018-SEB-TAB |
| vs. | ) ) | |
| CHARLES R. PHELPS, JR. PERSONAL REPRESENTATIVE OF THE ESTATE OF CHARLES PHELPS III AND GUARDIAN OF C.P., | ) ) ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |
| | ) | |
| CHARLES R. PHELPS PERSONAL REPRESENTATIVE OF THE ESTATE OF CHARLES PHELPS III AND GUARDIAN OF C.P., | ) ) ) ) | |
| Counter Claimant, | ) ) | |
| vs. | ) ) | |
| ILLINOIS FARMERS INSURANCE COMPANY, | ) ) ) | |
| Counterdefendant. | ) | |

**ORDER ON PENDING MOTIONS**

This cause is before the Court on Plaintiff's Motion for Judgment on the Pleadings

as to Counterclaims [Docket No. 24], filed on April 9, 2015, and Plaintiff's Motion to

Strike [Docket No. 32], filed on May 20, 2015.  Plaintiff and Counterdefendant Illinois

1

Farmers Insurance Company ("Illinois Farmers") filed this declaratory action seeking to have the Court declare the rights and obligations of the parties with regard to uninsured motorist coverage under its policy for claims made by Defendant and Counter Claimant Charles R. Phelps, Personal Representative of the Estate of Charles Phelps, III and Guardian of C.P. on behalf of the Estate of Charles Phelps ("the Phelps Estate") and C.P. Chad's Estate has filed a counterclaim against Illinois Farmers seeking an award of $250,000 in underinsured motorist coverage to Chad's Estate and $250,000 in underinsured motorist coverage to C.P. and has also alleged a bad faith claim against Illinois Farmers.  For the reasons detailed below, we GRANT Plaintiff's Motion to Strike and GRANT Plaintiff's Motion for Judgment on the Pleadings.[1]

### Factual Background

On July 27, 2013, Charles Phelps, III ("Chad"), his wife, Courtney Phelps, and their minor son, C.P., were passengers on a bus when it was involved in a single-vehicle accident.  Both Chad and Courtney died as a result of the accident.[2]  The bus was insured

---

[1] Plaintiff has moved to strike Defendant's Reply in Support of Cross-Motion for Judgment on the Pleadings, arguing that Defendant's motion was contained in its response to Plaintiff's motion for judgment on the pleadings in violation of Local Rule 7-1(a) and therefore the reply in support of that improperly filed motion should not be considered by the court.  Local Rule 7-1(a) instructs that "a motion must not be contained within a brief, response or reply to a previously filed motion, unless ordered by the court."  Accordingly, because Defendant's cross motion does not comply with the Local Rules and is not properly before the court, we GRANT Plaintiff's motion to strike Defendant's reply in support of its cross motion. *See Slabaugh v. State Farm Fire & Cas. Ins. Co.*, No. 1:12-cv-01020-RLY-MJD, 2010 WL 1767088, at *6 (S.D. Ind. May 1, 2004) ("[P]ursuant to Local Rule 7-1(a), the Court will not consider a motion that is contained within a response brief.").

[2] The claims and counterclaims by and between Illinois Farmers and the Estate of Courtney Phelps were dismissed with prejudice on July 29, 2015, following a voluntary stipulation of dismissal.

by Auto Owners Insurance Company with a combined single limit of $1,000,000 and under an umbrella policy issued by Mennonite Mutual Insurance Company with $1,000,000 per occurrence limits.  The driver of the bus was insured individually by Allstate Property and Casualty Company under a primary policy with limits of $250,000 per person and $500,000 per occurrence and under an umbrella policy with limits of $1,000,000.  The Phelps Estate received $450,000 in damages paid on behalf of those found to be legally liable for his death.  C.P. survived the accident and received $25,000 for his own bodily injuries paid on behalf of those found to be legally liable for his injuries.

**The Policy**

At the time of the accident, Chad Phelps had an automobile insurance policy with Illinois Farmers ("the Policy").  The Policy had underinsured motorist ("UIM") limits of $250,000 per person and $500,000 per occurrence.  The Policy contained the following provisions regarding UIM coverage:

> We will pay all sums which an **insured person** is legally entitled to recover as **damages** from the owner or operator of an **UNDERinsured** motor vehicle because of **bodily injury** sustained by the **injured person**.
>
> **Limits of Liability**
>
> a.  Our liability under the UNDERinsured Motorist Coverage cannot exceed the limits of the UNDERinsured Motorist Coverage stated in this policy, and our maximum liability under the UNDERinsured Motorist Coverage is the lesser of:
>
>     1.  The difference between the amount paid in **damages** to the **insured person** by and for any person or organization who may be legally liable for the **bodily injury**, and the limit of UNDERinsured Motorist Coverage; or

3

2. The amount of **damages** established but not recovered by any agreement, settlement, or judgment with or for the person or organization legally liable for the **bodily injury**.

Dkt. 1-1 at 31 (emphasis in original).  The phrase "underinsured motor vehicle" is

defined by the Policy, as follows:

**Underinsured Motor Vehicle** – means a land **motor vehicle** when:

1. the ownership; maintenance or use is insured or bonded for **bodily injury** liability at the time of the **accident**; and

2. its limit for **bodily injury** liability is less than the amount of the **insured person's damages**.

*Id.* at 32 (emphasis in original).

**The Instant Litigation**

On March 20, 2014, Illinois Farmers was advised of the underinsured motorist

claim being presented on behalf of the Phelps Estate and C.P.  Illinois Farmers denied the

underinsured motorist claim by the Phelps Estate on May 15, 2014, and again on June 10,

2014.  Illinois Farmers also denied payment of underinsured motorist coverage to C.P.

On December 9, 2014, Illinois Farmers filed its Complaint in this action.

<u>**Legal Analysis**</u>

**I. Standard of Review**

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment after

the pleadings are closed, but early enough not to delay trial; we review motions for

judgment on the pleadings under the same standard by which we review motions to dismiss for failure to state a claim under Rule 12(b)(6). *Buchanan-Moore v. County of Milwaukee,* 570 F.3d 824, 827 (7th Cir. 2009); *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).

In determining the sufficiency of a claim under this standard, the court considers all allegations in the complaint to be true and draws such reasonable inferences as required in the nonmovant's favor. *Jacobs v. City of Chi.,* 215 F.3d 758, 765 (7th Cir. 2000). Federal Rules of Civil Procedure 8(a) applies, with several enumerated exceptions, to all civil claims, and it establishes a liberal pleading regime in which a plaintiff must provide only a "short and plain statement of the claim showing that [he] is entitled to relief," Fed. R. Civ. Pro. 8(a)(2); this reflects the modern policy judgment that claims should be "determined on their merits rather than through missteps in pleading." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 779 (7th Cir. 2007) (citing 2 James W. Moore, et al., *Moore's Federal Practice* § 8.04 (3d ed. 2006)). A pleading satisfies the core requirement of fairness to the defendant so long as it provides "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

In its decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court introduced a more stringent formulation of the pleading requirements under Rule 8. In addition to providing fair notice to a defendant, the Court clarified that a complaint must "contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility requires more than labels and conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (quoting *Twombly,* 550 U.S. at 555).  Instead, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. The plausibility of a complaint depends upon the context in which the allegations are situated, and turns on more than the pleadings' level of factual specificity; the same factually sparse pleading could be fantastic and unrealistic in one setting and entirely plausible in another. *See In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F. Supp. 2d 363, 370 (M.D. Pa. 2008).

Although *Twombly* and *Iqbal* represent a new gloss on the standards governing the sufficiency of pleadings, they do not overturn the fundamental principle of liberality embodied in Rule 8. As this Court has noted, "notice pleading is still all that is required, and 'a plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.'" *United States v. City of Evansville*, 2011 WL 52467, at *1 (S.D. Ind. Jan. 8, 2011) (quoting *Tamayo*, 526 F.3d at 1083). On a motion to dismiss, "the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994).

6

## II.       Discussion

Illinois Farmers has moved for judgment on the pleadings on the counterclaims filed by the Phelps Estate, including the bad faith and punitive damage claims.  We address the parties' arguments on the counterclaims in turn below.

### A.       Uninsured Motorist Coverage Under the Policy

In Indiana, the interpretation of an insurance policy is a matter of law.[3]  *Westfield Companies v. Knapp*, 804 N.E.2d 1270, 1273-74 (Ind. Ct. App. 2004).  Insurance contract provisions are subject to the same rules of construction as other contracts.  Thus, courts must construe insurance policies as a whole, rather than considering individual words, phrases, or paragraphs.  *Id.* at 1274.  If the contract language is clear and unambiguous, it should be given its plain and ordinary meaning.  *Newnam Mfg., Inc. v. Transcon. Ins. Co.*, 871 N.E.2d 396, 401 (Ind. Ct. App. 2007).  Additionally, "[i]nsurance companies are free to limit their liability, so long as they do so in a manner consistent with public policy as reflected by case or statutory law."  *Gheae v. Founders Ins. Co.*, 854 N.E.2d 419, 423 (Ind. Ct. App. 2006).  Thus, "[a]n insurance policy that is unambiguous must be enforced according to its terms, even those terms that limit an insurer=s liability."  *Klepper v. ACE Am. Ins. Co.*, 999 N.E.2d 86, 90 (Ind. Ct. App. 2013).  "Where an ambiguity exists, that is, where reasonably intelligent people may interpret the policy's language differently, Indiana courts construe the insurance policies strictly against the

---

[3] The parties agree that Indiana law governs this case.

insurer." *Auto-Owners Inc. Co. v. Benko*, 964 N.E.2d 886, 890 (Ind. Ct. App. 2012). However, "an ambiguity is not affirmatively established simply because controversy exists and one party asserts an interpretation contrary to that asserted by the opposing party." *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002) (quotation omitted).

In interpreting UIM policy provisions, courts must be "mindful of the general objectives of Indiana's UIM legislation." *Frye v. Auto-Owners Ins. Co.*, No. 3:13-CV-113, 2015 WL 470399, at *5 (N.D. Ind. Feb. 4, 2015). "Indiana Code § 27-7-5-2 is a mandatory coverage, full-recovery, remedial statute … and its provisions are to be 'considered a part of every automobile liability policy the same as if written therein.'" *United Nat'l Ins. Co. v. DePrizio*, 705 N.E.2d 455, 460 (Ind. 1999) (quoting *Indiana Ins. Co. v. Noble*, 265 N.E.2d 419, 425 (1970)). Given the remedial nature of UIM coverage, "underinsured motorist legislation is to be liberally construed" and "read in a light most favorable to the insured." *Masten v. AMCO Ins. Co.*, 953 N.E.2d 566, 570 (Ind. 2011). The purpose of UIM coverage under Indiana law "is to give the insured the recovery he or she would have received if the underinsured motorist had maintained an adequate policy of liability insurance." *Corr v. Am. Family Ins.*, 767 N.E.2d 535, 540 (Ind. 2002). This does not, however, "necessarily assure full indemnification for all potential damage to all potential insureds …." *Id.*

Here, the Phelps Estate's counterclaim requests, *inter alia*, that the Court award "underinsured motorist coverage to the Estate of Charles Phelps in the amount of $250,000.00" and "underinsured motorist coverage to C.P. in the amount of

8

$250,000.00." Dkt. 13 at 11. Illinois Farmers argues that it is entitled to judgment on the pleadings on these counterclaims because the unambiguous terms of the Policy establish both that the Phelps Estate is not entitled to UIM benefits and that the maximum limit for C.P.'s UIM claim is $225,000. The Phelps Estate rejoins that the Policy's UIM provision is ambiguous and therefore should be construed against Illinois Farmers in favor of coverage up to the Policy's limit of $250,000 for both the Estate and C.P.

Essentially, the parties disagree regarding whether the Policy's UIM liability limitations provision requires payments to the insured from sources other than Illinois Farmers to be deducted from the policy limits or from the total amount of damages. Illinois Farmers argues that the UIM limitations provision clearly and unambiguously requires the former and the Phelps Estate contends the policy language is ambiguous and therefore should be construed in its favor to require the latter. The UIM limitations provision of the Policy explicitly limits coverage for UIM losses to the "lesser of" the "difference between the amount paid in damages to the insured person by and for any person or organization who may be legally liable for the bodily injury, and the limit of [UIM coverage]" and the "amount of damages established but not recovered by any agreement, settlement, or judgment with or for the person or organization legally liable for the bodily injury." (emphasis removed).

Upon careful review of the terms of the Policy as well as the applicable legal principles, we find that the UIM limitations provision clearly and unambiguously requires that payments made from the tortfeasor's insurance be deducted from the policy limits

9

rather than the total amount of damages.  Applying the UIM limitations provision to the undisputed facts set forth in the pleadings establishes that Illinois Farmers is entitled to set off the $450,000 payment to the Phelps Estate and the $25,000 payment to C.P. made by the alleged tortfeasors from the $250,000 per person limit available under the Policy, thereby reducing its liability to zero with regard to the Phelps Estate's claim and reducing its maximum liability to $225,000 with regard to C.P.'s claim.

This result is in line with the decision of the Indiana Court of Appeals in *Kinslow v. GEICO Insurance Company*, 858 N.E.2d 109 (Ind. Ct. App. 2006).  In *Kinslow*, Mr. Kinslow was killed and Mrs. Kinslow was seriously injured as a result of a multiple-vehicle accident, after which one vehicle left the scene.  Mrs. Kinslow settled with one tortfeasor's insurer following the accident and sued GEICO, her insurer, for recovery of uninsured motorist ("UM") benefits under two GEICO insurance policies.  GEICO refused to pay on the basis that any UM benefits owed under its policies were entirely offset by the settlement payment Ms. Kinslow had received from the tortfeasor's insurer. *Id.* at 110.

In reaching its determination in *Kinslow*, the court considered the limitations on UM/UIM coverage codified in Indiana Code § 27-7-5-5(c), which are almost identical to the "Limits on Liability" provision in the Policy at issue in the case at bar.  Section 27-7-5-5(c) provides:

> The maximum amount payable for bodily injury under uninsured or underinsured motorist coverage is the lesser of:
>
> (1) the difference between:

> (A) the amount paid in damages to the insured by or for any person or organization who may be liable for the insured's bodily injury; and
>
> (B) the per person limit of uninsured or underinsured motorist coverage provided in the insured's policy; or
>
> (2) the difference between:
>
> (A) the total amount of damages incurred by the insured; and
>
> (B) the amount paid by or for any person or organization liable for the insured's bodily injury.

The court in *Kinslow* noted that although § 27-7-5-5(c) was not explicitly incorporated into the GEICO policies at issue in that case, "the statutes governing UM/UIM insurance are considered a part of every automobile liability policy the same as if written therein." *Id.* at 114 (citation omitted). The court held that § 27-7-5-5(c) "establish[es] the maximum and minimum parameters for the amount of recovery a plaintiff is entitled to as a result of a UM or UIM claim" and that the language of the statute "is clear and unambiguous and is not open to interpretation." 858 N.E.2d at 114 (citation omitted). Applying § 27-7-5-5(c) to the facts before it, the court held that the statute required payments to the insured from other sources be deducted from the policy limits rather than from the total amount of damages and accordingly found that the maximum uninsured motorist coverage recoverable was zero. *Id.* The court went on to explain that "to allow Kinslow to recover anything under either GEICO policy would contravene clear and unambiguous statutory language." *Id.*; *see also Edwards v. Vernon Fire & Cas. Ins. Co.*, 571 N.E.2d 1306, 1308 (Ind. Ct. App. 1991) (applying § 27-7-5-5(c) and holding that the plaintiff "cannot recover because his policy has a [UIM]

coverage limit of $25,000 and he has received $25,000 from the tortfeasor's insurance company").

The District Court for the Northern District of Indiana recently reached the same result in *Frye v. Auto-Owners Insurance Company*, No. 3:13-CV-113, 2015 WL 470399 (N.D. Ind. Feb. 4, 2015).  In *Frye*, the UIM limitations provision analyzed by the court is nearly identical to the "Limitations of Liability" provision at issue here.[4]  Although neither party raised the issue in *Frye*, the court noted the similarity between the policy's UIM limitations provision and the limitations on coverage codified in § 27-7-5-5(c). Relying in part on the analysis of § 27-7-5-5(c) set forth in *Kinslow* as well as its independent review of the policy terms, the *Frye* Court held that the policy's UIM limitations provision was clear and unambiguous and required that the payment to the insured the plaintiff had received from the tortfeasor's insurance company be deducted from the policy limits rather than from the total amount of damages, resulting in zero liability under the UIM limitations provision.  2015 WL 470399, at *7.

---

[4] The UIM provision at issue in *Frye* provided as follows:
The maximum amount payable for bodily injury is the lesser of:
    a)  the difference between:
    (1) the amount paid in damages to the insured by or for any person or organization who may be liable for the insured's bodily injury; and
    (2) the per-person limit of underinsured motorists coverage; or
    b)  the difference between:
    (1) the total amount of damages incurred by the insured; and
    (2) the amount paid by or for any person or organization liable for the insured's bodily injury.
*Frye*, 2015 WL 470399, at *5.

12

The Phelps Estate argues that such a result is in contravention of the Indiana Supreme Court's decisions in *Beam v. Wausau Insurance Company*, 765 N.E.2d 524 (Ind. 2002) and *Tate v. Secura Insurance Company*, 587 N.E.2d 665 (Ind. 1992), both of which held that the amount already recovered from a third party would be deducted from the total damages sustained rather than the UIM policy limits. However, neither of these cases addressed the language set forth in § 27-7-5-5(c) or any language similar to that used in the Policy's UIM limitations provision here. Both *Beam* and *Tate* interpret policy provisions which state "any amount payable under this coverage shall be reduced by" and decide whether the phrase "any amount payable under this coverage" means the policy's UIM limits or the total damages the insured is legally entitled to recover from the tortfeasor. Because no such language appears in the UIM limitations provision at issue here, the analysis in *Beam* and *Tate* is not applicable.[5]

Accordingly, for the reasons detailed above, in line with the decisions in *Kinslow* and *Frye*, we find that the language of the Policy's UIM limitations provision is clear and unambiguous and requires that payments received from the tortfeasor's insurance be deducted from the Policy's UIM limit rather than the total amount of damages suffered. It is undisputed that the Phelps Estate received $450,000 from those legally liable for Chad Phelps's death; that C.P. received $25,000 from those legally liable for his injuries;

---

[5] We also note that the Indiana Court of Appeals in *Kinslow* distinguished both *Tate* and *Beam* on grounds equally applicable here – *Tate* on the basis that the insurance policy at issue had been issued before § 27-7-5-5(c) had been enacted and *Beam* because of a factual distinction, namely, that the total damages suffered by the insured in *Beam* were less than the UIM insurance limit at issue and it was therefore consistent with § 27-7-5-5(c) to set off the third party payment from the total damages rather than the UIM limit. 858 N.E.2d at 114.

and that the per person UIM limit of the Policy is $250,000.  With regard to the Phelps

Estate's claim for UIM coverage, the Policy language provides that the maximum amount

payable to the Phelps Estate is the lesser of: the difference between the amount paid in

damages by those legally responsible for Chad Phelps's death ($450,000) and the per-

person limit of its UIM coverage ($250,000), which is less than zero; or the difference

between the total amount of damages established (which the Phelps Estate alleges is

some amount greater than $450,000) and the amount paid by those legally responsible for

Chad Phelps's death ($450,000), which is some amount greater than zero.  Because an

amount less than zero is less than an amount greater than zero, Illinois Farmers owes

nothing for the Phelps Estate's UIM coverage claim.

Applying this same formula to C.P.'s claim for UIM coverage, the maximum

liability for C.P.'s claim is the lesser of: the difference between the amount paid in

damages by those legally responsible for C.P.'s injuries ($25,000) and the per-person

limit of its UIM coverage ($250,000), which is $225,000; or the amount of damages

established (which the Phelps Estate alleges is some amount more than $250,000) and the

amount paid by those legally responsible for C.P.'s injuries ($25,000), which is some

amount more than $225,000.  Because $225,000 is less than some amount more than

$225,000, Illinois Farmers's maximum liability for C.P.'s claim is limited to $225,000.

For these reasons, we find that Illinois Farmers is entitled to judgment on the

pleadings as to the Phelps Estate's counterclaims seeking UIM coverage.

### B.    Bad Faith Counterclaim

Illinois Farmers has also moved for judgment on the pleadings on the Phelps Estate's bad faith counterclaim.  It is well-established under Indiana law that there is a legal duty implied in all insurance contracts that insurers must deal in good faith with their insureds.  *See Monroe Guaranty Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 975 (Ind. 2005).  "The obligation of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim."  *Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 519 (Ind. 1993).  Indiana law is clear that "poor judgment and negligence do not amount to bad faith; rather the additional element of conscious wrongdoing (dishonest purpose, moral obliquity, furtive design or ill will) must be present."  *Masonic Temple Ass'n of Crawfordsville v. Indiana Farmers Mut. Ins. Co.*, 779 N.E.2d 21, 29 (Ind. Ct. App. 2002).

Here, the Phelps Estate alleges that Illinois Farmers has acted in bad faith by failing to "effectuate prompt, fair, and equitable settlement of claims in which liability has become reasonably clear, at least as to C.P." and by requiring its insureds "to pursue litigation to recover the amounts due under the insurance policy."  Dkt. 13 at 10, ¶¶ 22-23.  Specifically, the Phelps Estate argues that Illinois Farmers acted in bad faith by: (1) denying the claims for UIM coverage filed by both the Phelps Estate and the Estate of

15

Chad's wife, Courtney,[6] and then filing the instant declaratory action representing that a genuine dispute exists between the parties regarding coverage; and (2) for seeking declaratory judgment before agreeing to the value of C.P.'s claim. For the following reasons, we find that neither of these allegations is sufficient to support a bad faith claim against Illinois Farmers.

The fact that Illinois Farmers denied the Phelps Estate's claim and then filed this declaratory action to clarify and settle the rights and obligations of the parties is not by itself evidence of bad faith. Contrary to the Phelps Estate's argument, there is nothing inconsistent about an insurance company denying a claim for coverage and then seeking to have that denial confirmed by a court where, as here, the insured continues to assert a right to coverage. Here, there existed a genuine dispute regarding whether the Phelps Estate had a valid claim for UIM coverage, given the settlement proceeds from the tortfeasor's insurance already received by the Estate on behalf of Chad Phelps. After Illinois Farmers denied the claim, the Phelps Estate continued to assert that it was entitled to $250,000 of UIM coverage. It is well-established under Indiana law that "a good faith dispute about the amount of a valid claim or about whether the insured has a valid claim at all will not supply the grounds for a recovery in tort for the breach of the obligation to exercise good faith." *Erie*, 622 N.E.2d at 520. "That insurance companies may, in good faith, dispute claims has long been the rule in Indiana." *Id.* There is simply no allegation

---

[6] As noted above, the claims brought by the Estate of Courtney Phelps were voluntarily dismissed after Plaintiff's motion for judgment on the pleadings was fully briefed.

in the Phelps Estate's counterclaim that would raise an inference that in denying the UIM coverage claim and subsequently filing a declaratory action, Illinois Farmers acted with "dishonest purpose, moral obliquity, furtive design, or ill will" as required for finding bad faith.

Nor has the Phelps Estate adequately alleged that Illinois Farmers acted in bad faith with regard to C.P.'s claims for UIM coverage.  The Phelps Estate alleges only that Illinois Farmers failed to "effectuate prompt, fair, and equitable settlement of claims in which liability has become reasonably clear, at least as to C.P."  Dkt. 13 at ¶ 22.  It is true that, although Illinois Farmers disputes the exact value of C.P.'s claim, it has conceded that, if the value exceeds $25,000, C.P. is entitled to at least some amount of UIM benefits, and that despite this concession, Illinois Farmers has not yet paid any amount on the claim.  But Illinois Farmers's delay in settling is insufficient without more to support a claim for bad faith in the circumstances presented here, where the undisputed facts set forth in the pleadings establish that both the Phelps Estate and Courtney's Estate at that time continued to assert competing claims to the same policy limits.  Courts have recognized that one purpose of declaratory judgments is to "provide a remedy for parties whose contractual obligations are in question."  *Employers Mut. Cas. Co. v. Witham Sales & Serv., Inc.*, No. 2:08 cv 233, 2009 WL 4281457, at *5 (N.D. Ind. Nov. 23, 2009) (citing *Wilder v. Doe*, 30 F. Supp. 869, 870 (D.C. Pa. 1939) (observing that one of the policy reasons to render a declaratory judgment is to "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings").  Because in this

17

case multiple insureds disputed Illinois Farmers's coverage denials and continued to assert claims exceeding the per occurrence limits, we find as a matter of law that the insurer's decision to file a declaratory action to clarify and settle the coverage issues before settling the claim of one insured is insufficient without more to state a claim for bad faith.[7]

Because the Phelps Estate has failed to adequately plead its counterclaim alleging bad faith, we find there is no underlying tort on which to base a request for punitive damages and the Phelps Estate therefore may not recover punitive damages. *See Hale v. State Farm. Mut. Auto. Ins. Co.*, No. 1:14-cv-00036-TWP-MJD, 2015 WL 2250435, at *13-14 (S.D. Ind. May 13, 2015).

## III. Conclusion

For the reasons detailed above, we GRANT Plaintiff's Motion to Strike and GRANT Plaintiff's Motion for Judgment on the Pleadings as to Counterclaims.  The case shall proceed accordingly.

IT IS SO ORDERED.

Date:      3/28/2016

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[7] As noted above, Courtney's Estate has since voluntarily dismissed its claims so there is no longer a potential issue with the policy limits affecting C.P.'s UIM claim.  However, there still exists a dispute between Illinois Farmers and the Phelps Estate regarding the value of C.P.'s claim.  It is well established that "a good faith dispute about the amount of a valid claim … will not supply the grounds for a recovery in tort for the breach of the obligation to exercise good faith." *Erie*, 622 N.E.2d at 520.

Distribution:

Robert Scott O'Dell
O'DELL & ASSOCIATES, P.C.
rodell@odell-lawfirm.com

Hans H.J. Pijls
PLUNKETT COONEY
hans.pijls@dinsmore.com

Laura Sue Reed
RILEY BENNETT & EGLOFF LLP
lreed@rbelaw.com